[L.A. No. 31512. Aug. 30, 1982.]

COMMODORE HOME SYSTEMS, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
JOHNNIE BROWN et al., Real Parties in Interest.

## COUNSEL

Munger, Tolles & Rickershauser and Ralph F. Hirschmann for Petitioner.

Gibson, Dunn & Crutcher, William F. Spalding, Pamela L. Hemminger, Kenneth C. McGuiness, Robert E. Williams, Douglas S. McDowell, Barbara L. Neilson and McGuiness & Williams as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Hanson & Adams and Michael D. Hanson for Real Parties in Interest.

Joseph Posner, Marjorie Gelb, David Benjamin Oppenheimer, David A. Garcia, Theresa L. Thomas, Joan M. Graff, Linda J. Krieger, Rebecca I. McKee, Judith E. Kurtz and Nancy L. Davis as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

NEWMAN, J.—Petitioner Commodore Home Systems, Inc. (Commodore) seeks mandate after the San Bernardino Superior Court denied its

motion to strike portions of a complaint alleging job discrimination. The question is whether punitive damages are available in a suit for job discrimination pursuant to the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).[1]

The California Fair Employment Practices Act (FEPA) was enacted in 1959 (former Lab. Code, § 1410 et seq.; see Stats. 1959, ch. 121, § 1, p. 2000 et seq.). In 1980 it was recodified as part of the FEHA. (Stats. 1980, ch. 992, § 4, p. 3140 et seq.) The law establishes that freedom from job discrimination on specified grounds, including race, is a civil right. (§ 12921.) It declares that such discrimination is against public policy (§ 12920) and an unlawful employment practice (§ 12940).[2]

The statute creates a Department of Fair Employment and Housing (Department) (§ 12901), whose function is to investigate, conciliate, and seek redress of claimed discrimination (§ 12930). Aggrieved persons may file complaints with the Department (§ 12960), which must promptly investigate (§ 12963). If it deems a claim valid it seeks to resolve the matter—in confidence—by conference, conciliation, and persuasion. (§ 12963.7.) If that fails or seems inappropriate the Department may issue an accusation to be heard by the Fair Employment and Housing Commission (Commission). (§§ 12965, subd. (a), 12969; see too § 12903.)

The Commission determines whether an accused employer, union, or employment agency has violated the act. If it finds a violation it must "issue . . . an order requiring such [violator] to cease and desist from such unlawful practice and to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, restoration to membership in any respondent labor organization, as, in the judgment of the commission, will effectuate the purpose of this part . . . ." (§ 12970, subd. (a).)

If no accusation is issued within 150 days after the filing of the complaint and the matter is not otherwise resolved, the Department must

---

[1]All statutory references are to the Government Code unless otherwise indicated.

[2]Section 12940 provides: "It shall be an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: [¶] (a) For an employer, because of the race . . . of any person, to refuse to hire or employ the person . . . or to bar or to discharge such person from employment . . . or to discriminate against such person in compensation or in terms, conditions or privileges of employment. . . ."

give complainant a right-to-sue letter. Only then may that person sue in the superior court "under this part" (§ 12965, subd. (b)).

## FACTS

The complaint of Johnnie Brown and Bennie Butler (both of whom are black) alleges as follows: Brown was hired by Commodore in June 1979 as a quality-control inspector. He was fired in October 1979, ostensibly because of a work-force reduction. He filed a discrimination complaint with the Department (then the Fair Employment Practices Commission [FEPC]) in November 1979. In February 1980 he was re-hired and promoted. He alleges that the rehiring and promotion were solely to appease him and then demonstrate his incompetence so that he could be fired again. Commodore did fire him again in June 1980 for reasons "falsely and fraudulently contrived," he alleges.

Butler was hired in February 1979 as a quality-assurance manager. Like Brown, in October 1979 he was fired as part of the work-force reduction, and he too filed an FEPC complaint.

Both men received right-to-sue letters from the Department in April 1980. They sued and asserted that each was discharged solely because of race, under Commodore's policy of denying supervisory and management positions to blacks. They further alleged that Commodore employs no blacks as managers or supervisors, fires all blacks with aptitude for advancement to those positions, acted in "total disregard of plaintiff's rights and feelings," with "explicit intent" to jeopardize them, and proceeded "in an oppressive and malicious manner." The prayer seeks general and compensatory damages, as well as punitive damages of $500,000 for Butler and $750,000 for Brown.

Commodore moved to strike the punitive-damage words, asserting that monetary relief beyond back pay is not available under the FEHA. The court denied the motion. This petition followed.

## THE LAW

■ Commodore and supporting amici[3] note that subdivision (a) of section 12970 does not mention punitive damages; hence, they argue,

---

[3]Amicus briefs supporting Commodore have been submitted by (1) the Merchants and Manufacturers Association, the Federated Employers of the Bay Area, and the

courts may not award them. Since that subdivision addresses only the remedies the Commission may impose, however, here we need not fix its scope. Instead we conclude that the FEHA does not limit the relief a court may grant in a statutory suit charging employment discrimination. Therefore, as in other actions "for the breach of an obligation not arising from contract," punitive damages may be recovered "where the defendant has been guilty of oppression, fraud, or malice...." (Civ. Code, § 3294, subd. (a).)

■ When a statute recognizes a cause of action for violation of a right, all forms of relief granted to civil litigants generally, including appropriate punitive damages, are available unless a contrary legislative intent appears. (*Orloff* v. *Los Angeles Turf Club* (1947) 30 Cal.2d 110, 113 [180 Cal.Rptr. 321, 171 A.L.R. 913]; *Greenberg* v. *Western Turf Assn.* (1904) 140 Cal. 357, 363-364 [73 P. 1050].) Here we perceive no such intent.

■ Section 12965, subdivision (b), declaring the right to sue when the Department fails to act, was added in 1977. (Stats. 1977, ch. 1188, § 34, p. 3911; former Lab. Code, § 1422.2, subd. (b).)[4] Except by providing for attorney fees and costs, the subdivision does not address the subject of judicial remedies. Moreover, neither the 1977 amendment nor the 1980 recodification altered the only FEHA language that deals with remedies for employment discrimination, and that language concerns only the remedial powers of the Commission. (Cf. former Lab. Code, § 1426 with Gov. Code, § 12970, subd. (a).)

Commodore suggests that, by providing for a civil action "under this part" (§ 12965, subd. (b)), the Legislature expressed its intent to limit

California Hospital Association, and (2) the Equal Employment Advisory Council. Here, Commodore and those amici are sometimes called "the employers."

Amicus briefs in support of real parties have been submitted by (1) the Department, (2) the Commission, (3) the Employment Law Center and Equal Rights Advocates, and (4) Joseph Posner, attorney.

[4]Section 12965, subdivision (b), provides: "If an accusation is not issued within 150 days after the filing of a complaint, or if the department earlier determines that no accusation will issue, the department shall promptly notify, in writing, the person claiming to be aggrieved. Such notice shall indicate that the person claiming to be aggrieved may bring a civil action under this part against the person, employer, labor organization, or employment agency named in the verified complaint .... The superior courts of the State of California shall have jurisdiction of such actions.... In actions brought under this section, the court, in its discretion may award to the prevailing party reasonable attorney fees and costs except where such action is filed by a public agency or a public official, acting in an official capacity."

court remedies to those otherwise specified in the FEHA.[5] We do not agree. "[T]his part" pronounces an independent right, previously unrecognized in the statute, to sue for redress in court. While it describes remedies available in an administrative setting (see discussion *ante*), the statute is silent about court relief. There is no indication whatever that an award of punitive damages exceeds a court's powers "under this part."

The employers note that the statute allows recovery of "reasonable attorney fees and costs ..." which phrase, they assert, shows an intent to exclude other kinds of relief not available in Commission proceedings. Again we see no merit in the contention. The fee-cost provision was added in 1978 (Stats. 1978, ch. 1254, § 10, p. 4073) as part of more extensive amendments. The Legislative Counsel's Digest states only that "[a]ttorney fees would be allowed to the prevailing party." (Dig. of Assem. Bill No. 1915, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 350.) The sole aim appears to have been to contravene the general rule in California that, absent contrary agreement, litigants are not entitled to fees. (Code Civ. Proc., § 1021.)

Commodore invokes the maxim that remedies in statutes creating new causes of action are deemed exclusive. (See *Orloff, supra*, 30 Cal. 2d at p. 113; *Gold* v. *Los Angeles Democratic League* (1975) 49 Cal. App.3d 365, 373 [122 Cal.Rptr. 732].) Any such rule is inapposite here because the FEHA identifies none of the remedies available in court pursuant to its provisions.

The employers stress that federal statutes with similar language have been held not to authorize awards of either general compensatory or punitive damages. They rely in particular on interpretations of section 10(c) of the National Labor Relations Act (NLRA) (29 U.S.C.A. § 160(c) [unfair labor practices]; see *Edison Co.* v. *Labor Board* (1938) 305 U.S. 197, 235-236 [83 L.Ed. 126, 143, 59 S.Ct. 206]; *Van Hoomisen* v. *Xerox Corporation* (N.D.Cal. 1973) 368 F.Supp. 829, 837) and section 706(g) of title VII of the Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-5(g) [employment discrimination]; see, e.g., *Shah* v. *Mt. Zion Hospital & Medical Ctr.* (9th Cir. 1981) 642 F.2d 268, 272; *Richerson* v. *Jones* (3d Cir. 1977) 551 F.2d 918, 926-927; see also *Great American Fed. S. & L. Assn.* v. *Novotny* (1979) 442 U.S. 366, 374-375, and fn. 17 [60 L.Ed.2d 957, 965, 99 S.Ct. 2345]).

---

[5]The statute refers to part 2.8 of title 2, division 3 (§ 12900 et seq.).

Yet differences between those laws and the FEHA diminish the weight of the federal precedents. The NLRA provides no right of civil action against "unfair labor practices"; the National Labor Relations Board is sole forum for resolution of those claims. Section 10(c) specifies remedies the board may impose, and the cases hold merely that its language prevents that agency from assessing compensatory or punitive damages.

Contrastingly, title VII provides for judicial handling of federal discrimination claims in civil actions by the Equal Employment Opportunity Commission (EEOC) or, when it declines to sue, by persons aggrieved. (42 U.S.C.A. § 2000e-5(f)(1).) The federal statute expressly describes remedies that courts may assess. (*Id.*, § 2000e-5(g).) The cases hold that subdivision 5(g) is an implied limitation on courts' remedial powers.

The FEHA, on the other hand, provides separate routes to resolution of claims; first, a complaint to the Department; second, if that agency fails to act, a private court action. The statute discusses remedies only in the first context; here we are concerned with those available in the second. Federal precedents do not address that problem.[6]

There is another distinction, too, between the contexts in which federal and state damage questions must be decided. Federal law includes no provision comparable to California Civil Code section 3294, that punitive damages are available in all noncontractual civil actions unless otherwise limited.

One basis for federal holdings under title VII is a fear that the availability of punitive damages might hamper the EEOC's efforts to resolve discrimination disputes by "conference, conciliation, and persuasion." (42 U.S.C.A. § 2000e-5(b); see *Great American, supra,* 442 U.S. at

---

[6]The same is true of cases in other states, cited by the employers, wherein compensatory or punitive damages have been held unavailable under similar laws. (See, e.g., *Gutwein* v. *Easton Publishing Company* (1974) 272 Md. 563 [325 A.2d 740, 743-747], cert. den. (1975) 420 U.S. 991 [43 L.Ed.2d 673, 95 S.Ct. 1427].) Indeed, several courts have stressed that relief was sought from an agency, not a court. The right to "damages," they observed, traditionally is limited to the judicial forum with its more extensive procedural protections. (E.g., *Ohio Civil Rights Commission* v. *Lysyj* (1974) 38 Ohio St.2d 217 [313 N.E.2d 3, 6-7, 70 A.L.R.3d 1135], cert. den. (1974) 419 U.S. 1108 42 L.Ed.2d 804, 95 S.Ct. 780], *Mendota Apts.* v. *District of Columbia Com'n on H. R.* (D.C.App. 1974) 315 A.2d 832, 834-836; *Zamantakis* v. *Commonwealth Human Rel. Com'n* (1973) 10 Pa. Commw. 107 [308 A.2d 612, 616].)

pp. 373-374 [60 L.Ed.2d at pp. 964-965].) Section 12963.7 of our statute similarly instructs the Department, and the employers urge that administrative and judicial remedies thus should be identical.[7] The suggestion is that claimants, aware of their chance for a large court recovery, will decline fair settlements under Department auspices.

We are not persuaded. In the first place there is no right to sue, even after conciliation breaks down, unless the Department fails to file an accusation before the Commission. To that extent the availability of court remedies remains within the Department's control. More importantly, the compliance structure of the FEHA encourages cooperation in the administrative process. While that process continues the Department acts on the victim's behalf and absorbs costs of pursuing his claim. Court action inevitably is speculative, and the FEHA makes civil suit the claimant's sole responsibility. That helps deter strategies of "holding out" for court damages in inappropriate cases. Further, the possibility that an action might lead to punitive damages may enhance the willingness of persons charged with violations to offer fair settlements during the conciliation process.[8]

The employers note the history of the 1977 amendment that shows, they contend, an intent to limit remedies in a civil action to those obtainable from the Commission.[9] The private-right-of-action clause was part of Assembly Bill No. 738 (1977-1978 Reg. Sess.) (Assem. Bill No. 738). The bill included changes designed to separate prosecutorial from adjudicative functions, increase the Department's power,[10] and reduce the backlog of unprocessed complaints for which the FEPC had come

---

[7]Here, both Commodore's contention and our response assume for purposes of argument that punitive damages are not available from the Commission.

[8]Declarations by the Director and the general counsel of the Department advise that right-to-sue letters are the rule, not the exception, because the Department rarely is able to complete investigations, pursue conciliation, and issue accusations within the 150-day period. For that reason, a right-to-sue letter is issued, even in advance of 150 days, to any person who states in writing that he wants to withdraw his complaint and file a civil action. We express no opinion on the propriety of that practice. The Department suggests it refutes the employers' assumption that only the least meritorious claims are relegated to courts.

[9]Commodore requests we take judicial notice of various reports, letters, and legislators' memos dealing with the 1977 amendments. Real parties do not oppose the request. (See Law Revision Com. comment on div. 4 of Evid. Code, in effect Jan. 1, 1965.)

[10]Under the 1977 scheme the Department's functions were exercised by the Division of Fair Employment Practices.

under criticism. The report by the Assembly Committee on Labor, Employment, and Consumer Affairs made only a single reference to the provision for court action, noting that "[s]imilar to Federal law, this measure would also allow aggrieved parties to initiate private action if the Division takes no action after a certain period of time."

The Department of Finance Enrolled Bill Report summarized the civil action provision in nearly identical terms. It deemed minimal the fiscal effect of a right to sue, since "FEPC believes that few complainants would use the option of bringing civil action in a superior court. Such action would be time-consuming and costly if the complainant loses...."

In a letter to the Governor of September 23, 1977, Assemblyman Lockyer—the bill's author—explained that "should the Division fail to resolve a complaint within the specified time, the complainant would have the right of private civil action." On September 21, 1977, Alice Lytle, chief of the Division of Fair Employment Practices, also wrote the Governor in support of the bill, describing the right of action as "limited."

An undated memo in Assemblyman Lockyer's files, furnished by the Legislative Intent Service, states that under Assembly Bill No. 738 "[i]ndividuals have a right to very limited private action in State courts if the Division fails to issue an accusation...." Earlier the Assembly Committee on Labor, Employment, and Consumer Affairs had described nearly identical court action language in Assembly Bill No. 1075, a competing measure, as providing a suit "[s]imilar to the private right of action provision contained in federal law ...."

The declarations in the Lockyer letter and memo, the Lytle letter, and the Department of Finance Enrolled Bill Report, that the right of action is "limited," are not inconsistent with the availability of punitive damages. The right surely is "limited," in the sense that extensive administrative procedures are a precondition to its accrual.

Nor are we convinced by language in the committee reports about the similarity between federal and state causes of action. Again, those references may address the parallel requirement of first resort to a screening agency. They are too general and cursory to dispel the California presumption that punitive damages *are* available in noncontractual court actions.

Nor do policy considerations unique to employment matters rebut the presumption. California law long has recognized that discharges in violation of public policy may be actionable torts for which punitive damages can be recovered under Civil Code section 3294. (E.g., *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 176-177 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R. 4th 314] [discharge for refusal to commit antitrust violation; availability of punitive damages no bar to recognition of action]; see also *Montalvo* v. *Zamora* (1970) 7 Cal.App. 3d 69, 77 [86 Cal.Rptr. 401] [discharge for exercise of right to self-organization]; *Kouff* v. *Bethlehem-Alameda Shipyard* (1949) 90 Cal. App.2d 322, 325 [202 P.2d 1059] [discharge for acting as poll watcher; punitive damages available]; cf. Cal. Const., art. I, § 8, which covers private as well as state action.)

*Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216] recognized a right independent of the FEPA to seek emotional-distress and punitive damages when overt racial malice is the motive for a discharge. (Pp. 497-498, and fn. 2, 500, fn. 7.) Since the opportunity for employment free of discrimination is a civil right, said *Alcorn* (see former Lab. Code, § 1412; now Gov. Code, § 12921, *supra*), "plaintiff's status as an employee should entitle him to a *greater* degree of protection from insult and outrage than if he were a stranger to defendants...." (P. 498, fn. 2, italics added.)

The policy that promotes the right to seek and hold employment free of prejudice is fundamental. Job discrimination "foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advance, and substantially and adversely affects the interest of employees, employers, and the public in general." (§ 12920.) The statute's aim is to provide effective remedies against the evil.

Even if the Legislature did limit the remedies available in the administrative setting (a question we need not decide), it has not spoken similarly about the judicial forum. Distinctions between the two kinds of proceedings suggest that restrictions on the agency do not by implication extend to a court.

As we have stressed, the FEHA leaves an aggrieved party on his own if the Department declines to pursue an administrative claim in his behalf. To limit the damages available in a lawsuit might substantially

deter the pursuit of meritorious claims, even where litigation expenses are payable to the successful employee.

Absent a convincing statement of contrary legislative intent, we rule that, in a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained. We affirm the order denying Commodore's motion to strike the prayers for punitive damages from real parties' complaint.

The peremptory writ of mandate sought by Commodore is denied; the alternative writ, discharged.

Bird, C. J., Broussard, J., and Reynoso, J., concurred.

MOSK, J.—I concur in the order and in the opinion with one exception: I do not deem it appropriate to refer, for any purpose, to legislators' letters expressing their understanding of legislative intent.

It is unfortunate that in California we do not have the equivalent of the Congressional Record. Thus, we lack the ability to glean from verbatim floor debates a common denominator or consensus reflecting views on a measure under consideration. The journal required of each house by the Constitution (art. IV, § 7, subd. (b)) does not serve this purpose. On occasion we do have some minimal history in published committee reports, legislative counsel analyses, and in the case of initiative measures the publically distributed explanation of proponents. But other than those occasionally helpful indicia of legislative intent we are necessarily confined to the four corners of the statute.

One legislator may express his opinion on the purpose and limitations of a pending proposal. But he—even if the author of the measure—represents only 1/120th of the whole Legislature. He cannot possibly know the subjective intent of other members of the two houses who supported the bill. For that reason I am convinced no court should lend any credence to a legislator's letter, expansive or limited, regarding a legislative enactment.

My views on this subject are consistent with the court's unanimous opinion in *In re Marriage of Bouquet* (1976) 16 Cal.3d 583 [128 Cal. Rptr. 427, 546 P.2d 1371], in which it was held (at pp. 589-590) that "In construing a statute we do not consider the motives or understandings of individual legislators who cast their votes in favor of it.

[Citations.] Nor do we carve an exception to the principle simply because the legislator whose motives are proferred [*sic*] actually authored the bill in controversy [citation]; no guarantee can issue that those who supported his proposal shared his view of its compass." There are many similar rulings by appellate courts (see e.g., *Tillie Lewis Foods, Inc.* v. *City of Pittsburg* (1975) 52 Cal.App.3d 983, 1006 [124 Cal.Rptr. 698]; *Bauman* v. *Islay Investments* (1975) 45 Cal.App.3d 797 [119 Cal.Rptr. 681].) The best example of the futility of employing communications from individual legislators is *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 257-258 [104 Cal.Rptr. 761, 502 P.2d 1049], in which two legislators offered distinctly contrary opinions on the intent of the Legislature in enacting a statute. (Also see *Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 654 [135 Cal.Rptr. 75, 557, 507].)

The majority in the instant case are ill-served by any reference to one legislator's opinion.

Reynoso, J., concurred.

**RICHARDSON, J.**—I respectfully dissent. In my view, the Legislature did not intend to permit the recovery of punitive damages in job discrimination actions brought under the Fair Employment and Housing Act (FEHA).

A civil action may be brought after the Fair Employment and Housing Commission (commission) either fails, or expressly declines, to issue an accusation for 150 days after the filing of a complaint. (Gov. Code, § 12965, subd. (b); further statutory references are to this code.) If the commission fails to act, then "the person claiming to be aggrieved may bring a civil action *under this part* [i.e., under FEHA] against the person, employer, labor organization or employment agency named in the verified complaint . . . ." (*Ibid.*, italics added.) The statutory requirement that any such civil action must be brought "under" FEHA, persuades me that the remedies available in such an action are those, and only those, which are specified in FEHA. Moreover, it would be wholly anomalous to allow punitive damages to accusors who have been unsuccessful administratively before the commission, but to deny such damages to those whose claims have been successfully established. The result of any such disparity of remedy would be to encourage claimants to file insufficient or inadequate complaints with the commission in order to avoid or circumvent administrative proceedings in the hope of obtaining punitive damages in subsequent civil actions. Such a conse-

quence would be contrary to FEHA's policy of eliminating employment discrimination through administrative "conference, conciliation, and persuasion." (Gov. Code, § 12963.7, subd. (a).)

The majority does not reach the question whether the commission itself is empowered to award punitive damages in employment discrimination cases but, as I have explained, a resolution of that issue is critical to a correct determination of the present case. In my view, both the statutory language and relevant legislative history, which I briefly explore, conclusively establish that the commission has no such authority.

FEHA recites that "It is the purpose of this part to provide effective remedies which will eliminate . . . discriminatory practices." (Gov. Code, § 12920.) The remedies so provided do not include any award of punitive damages. Under FEHA, if the commission finds an unlawful employment practice, it may order the employer (or other person guilty of unlawful practices) to (1) cease and desist and (2) take such other action as "hiring, reinstatement or upgrading of employees, *with or without back pay*, restoration to membership in any . . . labor organization," as the commission deems appropriate. (Gov. Code, § 12970, subd. (a), italics added.) "Back pay" represents the sole measure of any monetary damages that may be awarded in employment discrimination cases, and even that award rests in the commission's sound discretion. This statutory language affecting *employment* cases may be contrasted with that used in *housing* discrimination situations in which the Legislature has expressly authorized the commission to exact "The payment of actual *and punitive* damages to the aggrieved person in an amount not to exceed one thousand dollars ($1,000)." (Gov. Code, § 12987, subd. (2), italics added.) To me, the conclusion seems inescapable that a punitive award is available under FEHA *only* in cases of housing discrimination. This determination is reinforced by the applicable legislative history.

The foregoing limited remedy language of subdivision (a) of section 12970 recodifies and substantially reenacts that of former Labor Code section 1426, which was adopted in 1959 as part of the Fair Employment Practices Act (FEPA). Also, the phrasing bears a close resemblance to section 10(c) of the National Labor Relations Act (NLRA) (29 U.S.C.A. § 151 et seq., § 160(c)), which directs the National Labor Relations Board (NLRB), when it finds an unfair labor practice, to issue a cease and desist order which shall require the violator "to take such affirmative action including reinstatement of employ-

ees with or without back pay, as will effectuate the policies of this sub-chapter:. . . ." It is significant that both before and after 1959, the NLRA had been interpreted as not allowing punitive damages. (See *Edison Co.* v. *Labor Board* (1938) 305 U.S. 197, 235-236 [83 L.Ed. 126, 143, 59 S.Ct. 266] ["The power to command affirmative action is remedial not punitive. . ."]; *Van Hoomissen* v. *Xerox Corporation* (N.D.Cal. 1973) 368 F.Supp. 829, 837.) The similarity of the federal and state statutory language strongly suggests that FEHA should receive a parallel construction.

Referring to the NLRB, *Edison* held that "the power to command affirmative action is remedial not punitive"; it is intended to allow restraint of violators and "as a means of removing or avoiding the consequences of a violation" where that serves the law's aims. The statute "does not go so far," said the Supreme Court, as to allow a punitive order "even though the Board be of the opinion that the policies of the Act might be effectuated by such an order." (305 U.S. at pp. 235-236 [83 L.Ed.2d at p. 143].)

Real parties purport to find a material distinction between the state and federal laws in the deletion from FEPA in 1969 of the term "affirmative" preceding the word "action." As in the NLRA, the original FEPA used the phrase "affirmative action." (Stats. 1969, ch. 526, § 1, p. 1142.) Real parties interpret this deletion as reflecting a legislative intent to enlarge the commission's powers by removing any remedial limitation implied by the word "affirmative."

However, the available legislative history does not support that contention. Assembly Bill No. 407 (Greene), 1969 Regular Session, originally proposed to substitute the word "positive" for "affirmative"; subsequent versions omitted both terms. The Enrolled Bill Report of the Department of Industrial Relations and the Enrolled Bill Memo of the Governor's Legislative Secretary both state that the aim of the proposed change was to avoid confusion with a 1967 amendment authorizing the FEPC to engage in "affirmative actions with employers, employment agencies, and labor organizations . . . ." (See former Lab. Code, § 1431; now Gov. Code, § 12990.) "In other words," according to the report and memo, "*Affirmative Action* in AB 544 [the 1967 amendment] was a little broader than Affirmative Action in Section 1426 of the Labor Code [the remedies provision]." (Italics in original.) Although these expressions are not controlling upon us, they do shed some light on the legislative purpose and real parties suggest no contrary indication.

I also find it significant that very similar language in title VII of the federal Civil Rights Act of 1964, enacted five years after FEPA, has been interpreted as barring punitive damage awards. Under section 706(g) of title VII, the trial court is authorized to enjoin intentional violations of the act and to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . ., or any other equitable relief as the court deems appropriate . . . ." (42 U.S.C.A. § 2000e-5 (g).)

Decisions under title VII have stressed that its remedy language was "expressly modeled" on section 10(c) of the NLRA. (*Richerson* v. *Jones* (3d Cir. 1977) 551 F.2d 918, 927; cf. *Albemarle Paper Co.* v. *Moody* (1975) 422 U.S. 405, 419, and fn. 11 [45 L.Ed.2d 280, 297, 95 S.Ct. 2362].) Some courts have invoked the doctrine of *ejusdem generis* in concluding that the type of "affirmative action" which is illustrated by a make-whole award of back pay does not include punitive assessments. (*Richerson, supra*, at p. 927; *Equal Employment Op. Com'n* v. *Detroit Edison Co.* (6th Cir. 1975) 515 F.2d 301, 309-310.) Several other decisions have focused on the phrase "equitable relief" in section 706(g), noting that punitive damages traditionally are not available in equity. (*Shah* v. *Mt. Zion Hospital & Medical Ctr.* (9th Cir. 1981) 642 F.2d 268, 272; *Miller* v. *Texas State Bd. of Barber Examiners* (5th Cir. 1980) 615 F.2d 650, 654; *Richerson, supra*, at pp. 926-927; *Detroit Edison Co., supra*, at pp. 309-310.)

As previously noted, I find it persuasive that the housing discrimination provisions of FEHA include "the payment of punitive damages not to exceed one thousand dollars" (adjusted, since 1981, for cost of living) as one of the nonexhaustive list of "actions" which the commission may, "in [its] judgment," order a violator to take to "effectuate the purpose of this part." (Gov. Code, § 12987, and subd. (2).) The express provision for punitive damages in this parallel statutory scheme strongly suggests to me that the omission of this particular remedy from the employment discrimination provisions was intentional. The Legislature has clearly demonstrated that it knows how to add a punitive remedy to this statute when it wishes to do so.

California's original housing discrimination law, the Hawkins Act, was adopted in 1959, the same year as FEPA. (Stats. 1959, ch. 1681, § 1, p. 4074 et seq.) The Hawkins Act covered only "publicly assisted housing" and allowed aggrieved persons to sue for "restraint of [viola-

tions] and for other equitable remedies, including any affirmative relief as may be necessary to undo the effects of [a] violation." Separately, the statute provided for the award of "damages [of] not less than" $500. (*Id.*, at p. 4076 [former Health & Saf. Code, § 35730].)

In 1963 the Hawkins Act was supplanted by the Rumford Act (Stats. 1963, ch. 1853, § 2, p. 3823 et seq.). The 1963 act expanded the categories of housing in which discrimination was prohibited. It empowered the FEPC to order a violator to (a) cease and desist and (b) take any "*one* of the following affirmative actions" as, in its judgment, would serve the law's purpose: "(1) [t]he sale or rental of the housing accommodation ... [,] (2) [t]he sale or rental of a like accommodation, if one is available, or the next vacancy in a like accommodation[, or] (3) [t]he payment of damages [not exceeding $500] *if the commission determines that neither of the remedies under (1) or (2) is available.*" (*Id.*, at p. 3828 [former Health & Saf. Code, § 35738], italics added.) A 1975 amendment increased the maximum damage award to $1,000. (Stats. 1975, ch. 280, § 1, p. 701.)

The final chapter was added in 1977 when the act again was amended to broaden the scope of illegal discriminatory acts. The commission was authorized to order "such actions" by a violator as it deemed appropriate to serve the law, including, but not limited to, the sale or rental of the same or similar housing, the provision of nondiscriminatory purchase, rental, and financing terms, *and* "[t]he payment of actual *and punitive* damages" not exceeding $1,000. (Italics added, Stats. 1977, ch. 1187, § 10, p. 3893; ch. 1188, § 13.1, pp. 3905-3906.) With irrelevant changes the Legislature carried this scheme forward when it combined the employment and housing laws in FEHA.

The foregoing history strongly suggests that the original provision of "damages" in the housing law, but not the employment statute, was purposeful. The Legislature may well have concluded that damages were a necessary alternative to other relief in housing cases, because the passage of time often would make it impossible or impracticable to force a violator to offer the same or similar accommodations. However, direct remedies for employment discrimination, such as reinstatement and back pay, are less likely to become unavailable after the fact, making an alternative damage remedy less essential.

Later versions of the housing law abandoned the "last-resort" theory of damages and provided that damages could be both cumulative to

other remedies and punitive as well. Still no similar remedy was added to the employment statute. This situation remained the same when, in 1980, the housing and employment schemes were restructured in a single enactment.

The remedy language of the employment and housing sections seems consciously parallel in other important respects. Both provide for cease and desist orders and declare that violators may be directed to "take such action[s]," as, in the commission's judgment, will effectuate the statutory purpose, "including, but not limited to," those specified. (Cf. Gov. Code, § 12970, subd. (a), with § 12987.) This side-by-side development of the two schemes, I believe, fully supports the conclusion that punitive damages were excluded intentionally from Government Code section 12970, subdivision (a).

A number of our sister state courts have concluded that statutes similar to FEHA do not authorize the nonjudicial award of compensatory or punitive damages. (E.g., *Ohio Civil Rights Commission* v. *Lysyj* (1974) 38 Ohio St.2d 217 [313 N.E.2d 3, 6-7, 70 A.L.R.3d 1135]; *Gutwein* v. *Easton Publishing Company* (1974) 272 Md. 563 [325 A.2d 740, 743-747], cert. den. (1975) 420 U.S. 991 [43 L.Ed.2d 673, 95 S.Ct. 1427]; *Mendota Apts.* v. *District of Columbia Com'n on H.R.* (D.C.App. 1974) 315 A.2d 832, 834-836; *Zamantakis* v. *Commonwealth, Human Rel. Com'n* (1973) 10 Pa. Commw. 107 [308 A.2d 612, 616].) Most of these cases stress the parallel with the federal statutes.

I fully recognize that the commission's own regulations (see Gov. Code, § 12935, subd. (a)) interpret section 12970, subdivision (a), as permitting it to award exemplary damages. Title 2, section 7286.9 of the California Administrative Code authorizes broad forms of retroactive, injunctive, and prospective relief. The regulation further provides that "[w]hile normal monetary relief shall include relief in the nature of back pay, reasonable exemplary or compensatory damages may be awarded in situations involving violations which are particularly deliberate, egregious, or inexcusable." (Subd. (c).) However, the commission cannot by its own regulations create a remedy which the Legislature has withheld. The exercise of administrative power by regulation can rise no higher than its legislative source. While construction of a statute by the enforcing agency deserves weight it cannot, of course, prevail over persuasive indications of contrary legislative intent. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 117 [172 Cal.Rptr. 194, 624 P.2d 244].)

I conclude that section 12970, subdivision (a), does not allow the commission to award exemplary damages. Accordingly, the trial court lacked authority to award such damages in a suit brought "under" FEHA. I would grant the peremptory writ and reverse the order denying petitioner's motion to strike the punitive damages claim from the amended complaint.

Kaus, J., concurred.