[No. B040875. Second Dist., Div. Six. Oct. 16, 1990.]

CARL D. ROBERTS, Plaintiff and Respondent, v.
FORD AEROSPACE AND COMMUNICATIONS CORPORATION
et al., Defendants and Appellants.

**COUNSEL**

McCutchen, Black, Verleger & Shea, Baker, Hostetler, McCutchen & Black, Howard J. Privett, Jack D. Fudge and Ralph Zarefsky for Defendants and Appellants.

Fred J. Hiestand as Amicus Curiae on behalf of Defendants and Appellants.

Marilyn Gilbert for Plaintiff and Respondent.

## OPINION

**STONE (S. J.), P. J.**—Ford Aerospace and Communications Corporation (Ford) appeals from a judgment for wrongful termination in favor of Carl D. Roberts, respondent. The jury awarded economic and noneconomic damages of $295,224.09 and punitive damages of $750,000. Ford contends that reversal is mandated because: 1) there can be no tort recovery for breach of the covenant of good faith and fair dealing; 2) the Supreme Court's grant of review of a recent appellate decision may indicate that the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) occupies the field of employment discrimination; 3) compensatory and punitive damages against Ford can be no greater than those assessed against Ford's employee defendants; and 4) the punitive damages assessed here are unconstitutional.

We granted leave to the Association of California Tort Reform to file an amicus curiae brief in support of Ford's challenge to the constitutionality of punitive damages. For reasons expressed herein, we reject the challenges raised and affirm the judgment.

## FACTS

June 6, 1983, Ford fired respondent after seven years of employment at Vandenberg Tracking Station. At the onset, respondent, a Black, received favorable performance reviews, but after Ford hired a new group of employees, respondent found racially pejorative statements scrawled on the walls of the bathroom. He complained about the defaced walls, and the graffiti were eventually removed. A series of incidences began where respondent was excluded from discussions, meeting times were changed without notice to him so that he arrived late and was reprimanded, and other employees ridiculed him and mimicked his manner of speech.

Respondent complained to the supervisors about these matters and about the failure to receive pay raises and chances for promotion. The evidence revealed repeated acts of harassment which escalated after he complained to management of racial discrimination. He filed complaints with the Fair Employment and Housing Commission to which Ford responded. After he began to complain about the discriminatory treatment, his performance reviews deteriorated and he was eventually fired.

After receiving a "right to sue" letter from the Fair Employment and Housing Commission, respondent filed a complaint and "FIRST AMENDED

Complaint for Damages for Tortious Breach of Employment Agreement, Breach of Good Faith, Breach of Contract, Intentional and Negligent Infliction of Emotional Distress, and Retaliatory Discharge." Each of the causes of action was asserted against Ford and three individuals, Paul Barbara, Robert Bliss and Jack Luna, respondent's supervisor and station manager.

The jury ruled on special verdicts as follows: 1) respondent's termination was racially motivated in violation of public policy against racial discrimination; 2) Ford and each individual defendant breached the covenant of good faith and fair dealing; 3) Ford breached an implied or express promise not to terminate respondent except for good cause; 4) none of the defendants had engaged in intentional infliction of emotional distress; and 5) each defendant engaged in negligent conduct which caused severe emotional distress.

The jury awarded compensatory damages of $295,224.09, $100,000 of which were "non-economic" damages. The jury made Ford liable for $292,224.09 and each individual defendant liable for $1,000. The jury also rendered special verdicts concerning punitive damages: 1) no defendant acted with malice in discriminating against respondent on the basis of race; 2) all defendants acted with malice in retaliating for respondent's having complained of discrimination; 3) all defendants acted with malice in violating the covenant of good faith and fair dealing.

The jury awarded $750,000 in punitive damages, all assessed against Ford. Ford moved for judgment notwithstanding the verdict and for a new trial on the basis that tort damages, including punitive damages, may not be awarded in a wrongful discharge action and no substantial evidence existed to support the verdict.

The trial court denied the motion.

## DISCUSSION

### 1. *Foley and Newman Do Not Compel Reversal in This Case.*

In *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 663 [254 Cal.Rptr. 211, 765 P.2d 373], the California Supreme Court held that the covenant of good faith and fair dealing applies to employment contracts and that breach of the covenant gives rise only to contract damages. In *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772

P.2d 1059], the Supreme Court held *Foley* retroactive to all cases not yet final on January 30, 1989, the date *Foley* became final. ██ Ford asserts that since respondent alleged a cause of action for breach of covenant of good faith and fair dealing and since the jury awarded both tort and contract damages without differentiation against all defendants, as well as punitive damages against Ford, we must reverse the judgment. We disagree.

*Newman* held that a plaintiff may seek tort relief for a violation of public policy or discrimination. (48 Cal.3d 973, 990-991.) In California, freedom from job discrimination on specified grounds such as racial discrimination is a civil right. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 486 [208 Cal.Rptr. 724, 691 P.2d 272]; *Watson* v. *Department of Rehabilitation* (1989) 212 Cal.App.3d 1271, 1284 [261 Cal.Rptr. 204].) Such discrimination is against public policy and an unlawful employment practice. (*Watson* at p. 1284; Gov. Code, §§ 12920, 12940.) Thus, where an action is pleaded under the Fair Employment and Housing Act for racial employment discrimination, recovery of punitive damages under the general provisions of Civil Code section 3294 is permitted. (*Monge* v. *Superior Court* (1986) 176 Cal.App.3d 503, 509 [222 Cal.Rptr. 64]; *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 220-221 [185 Cal.Rptr. 270, 649 P.2d 912].)

Contrary to Ford's assertions, respondent's first cause of action was for wrongful termination based on racial discrimination and was based upon Government Code section 12940. "[T]he Legislature has directed that the FEHA is to be construed 'liberally' so as to accomplish its purposes. (§ 12993.)" (*Brown* v. *Superior Court, supra,* 37 Cal.3d 477, 486.) In *Newman, supra,* the Supreme Court recognized that in cases already tried, reversal might be necessary where it is not possible to excise tort damages for breach of the covenant from the remainder of the judgment. (48 Cal.3d 973, 992.) However, we reject Ford's assertion that the judgment must be reversed even if substantial evidence exists to support tort damages under one of the other causes of action. Substantial evidence supports the jury's findings that Ford terminated respondent in violation of public policy against racial discrimination and that all defendants acted with malice in retaliating against respondent for complaining of the discrimination.

Post-*Foley* cases have differed in application of the general presumption that a general verdict in favor of the plaintiff is sustainable where two theories are placed before the jury but only one is supported by substantial evidence. In *Carpiaux* v. *Peralta Community College Dist.* (1989) 215 Cal.App.3d 1220 [264 Cal.Rptr. 208] the reviewing court held that the jury reached an improper verdict where the court instructed, in contravention of

*Foley*, that the jury could award tort damages for breach of the covenant of good faith and fair dealing, and reversed the judgment. (*Id.*, at p. 1224.)

At least two other recent appellate cases (not final at this time) have ordered reversal of noneconomic or punitive damages where the judgment was based on contract causes of action which would not support tort damages post-*Foley*, or where the reviewing court could not ascertain upon which cause of action the jury imposed noneconomic or punitive damages. Here, however, we are not faced with that dilemma. The jury found in favor of respondent on causes of action that justified imposition of noneconomic damages and specifically found that all appellants acted with malice in retaliating against respondent for complaining of racial discrimination. Thus, we know that the jury's findings justified imposition of punitive damages on the tort cause of action and the additional finding that appellants also acted with malice in breaching the covenant of good faith and fair dealing does not detract from or affect the propriety of imposition of punitive damages on the tort cause of action based on violation of public policy under Government Code section 12940 et seq. Moreover, *Newman* recognized that in many cases the form of the verdict or special findings might allow excision of tort damages for breach of the covenant of good faith and fair dealing from the remainder of the judgment. (48 Cal.3d at p. 992.)

Consequently, we find distinguishable the reasoning of *Carpiaux* and its progeny and choose instead to follow the holding in *Mouchette* v. *Board of Education* (1990) 217 Cal.App.3d 303, 315 [266 Cal.Rptr. 1]. Where a special verdict was rendered on two causes of action and sufficient evidence exists to sustain it on the issue unaffected by error, it should not matter that the evidence was insufficient to sustain a verdict in favor of the successful party on the other cause of action or that reversible errors were committed regarding that other cause of action. "[T]he special verdict rendered is indistinguishable from a general verdict in which a jury finds in favor of a party on more than one cause of action." (*Ibid.*) Since substantial evidence supports the statutory cause of action on which tort damages are allowable, the jury's verdict may be upheld here.[1]

The recent grant of review in *Rojo* v. *Kliger**\* (Cal.App.), a case which discusses whether exhaustion of administrative remedy under the Fair Employment and Housing Act is a condition precedent to maintaining a civil action, does not change our holding. Respondent exhausted his administrative remedies, obtained a "right to sue" letter, and was entitled to bring a

---

[1] We strongly suggest that trial courts and plaintiffs use special findings and verdicts to segregate damages and avoid the necessity of retrials where causes of action or remedies disappear between pleading stage and appellate review.

\* Reporter's Note: For Supreme Court opinion, see *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 160, 801 P.2d 373].

civil action to seek redress for any claimed discrimination in the workplace. (Gov. Code, § 12965, subd. (b).)

2. *Jury Could Assess Greater Damages Against Ford.*

■ Ford contends that its liability was derivative and Ford could not be liable for greater damages than its individual employees. (See *Daniel* v. *Jones* (1934) 140 Cal.App. 145, 147 [35 P.2d 198].) That rule, applicable in suits by an injured victim against the driver and the driver's employer as respondeat superior, is inapplicable where the company was aware of the complaints and sanctioned the conduct of its employees and managing agent. "The liability of an innocent, nonparticipating principal under the respondeat superior doctrine is based upon the wrongful conduct of the agent; the principal cannot be liable unless the agent is liable. Hence, a judgment which holds the principal and *exonerates the agent* is 'self-stultifying' and must be reversed . . . . [¶] One *procedural qualification* to the above rule has been declared: A verdict which does not exonerate the agent, but is merely *silent* as to him, is not defective." (2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 116, pp. 111-112; *Maberto* v. *Wolfe* (1930) 106 Cal.App. 202, 209 [289 P. 218].) However, a verdict is considered "self-stultifying" "only where the principal or employer is innocent of wrongdoing and his liability is based on *respondeat superior*. If an employee acts *under the direction of his employer,* the employer participates in the act, and his liability is based upon his own fault. . . ." (2 Witkin, *supra,* § 117 at p. 112; see *Jensen* v. *Southern Pacific Co.* (1954) 129 Cal.App.2d 67, 70 [276 P.2d 703] disapproved on other grounds in *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897].) This rule holds true where, as here, the principal is under an obligation or liability independent of the agent's acts. (*Ibid.*; *Lehmuth* v. *Long Beach Unified Sch. Dist.* (1960) 53 Cal.2d 544, 550 [2 Cal.Rptr. 279, 348 P.2d 887].)[2]

It is unlawful for an employer to discriminate against a person in compensation or in terms, conditions or privileges of employment because of race or to discriminate against any person because the person has opposed practices forbidden under law or has filed a complaint or testified in any proceedings. (Gov. Code, § 12940, subds. (a), (c), (f).) Substantial evidence supports the fact that Ford knew of the harassment against respondent because respondent complained to Ford's corporate management. He complained about the writing on the men's room wall, retaliatory removal from training, which adversely affected his chances for promotion, of hostility

---

[2] We allowed additional briefing on this issue due to respondent's citing for the first time at oral argument *Browand* v. *Scott Lumber Co.* (1954) 125 Cal.App.2d 68 [269 P.2d 891].) We find discussion of that case unnecessary to our resolution of this issue.

and antagonism, and exclusion and ostracism from his work group. He pointed out to them that white employees with less seniority received more benefits. He sought aid from management, Ford's industrial relations department, and from a highly placed corporate manager. He was fired shortly after writing to the corporate manager.

Civil Code section 3294 states that, "(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant. (b) An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."

Ford's manager, Mr. Luna, testified that he had power only to recommend hiring and firing, and although he terminated respondent's employment, "no single person in Ford . . . has the authority to fire anybody." To fire someone, "you have to get the support . . . from Industrial Relations." The evidence more than supported a finding that Ford participated in the discriminatory conduct.

Ford complains that only circumstantial evidence existed to support the jury's verdict. However, " 'Ratification . . . may be established by any circumstantial or direct evidence demonstrating adoption or approval of the employee's actions by the corporate agent. [Citations.] Such ratification may be inferred from the fact that the employer, after being informed of the employee's actions, does not fully investigate and fails to repudiate the employee's conduct by redressing the harm done and punishing or discharging the employee. [Citations.]' (*DFEH* v. *Hart and Starkey, Inc.*, *supra*, FEHC No. 84-23 at p. 37.) (See fn. 9.)" (*Fisher* v. *San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 621 [262 Cal.Rptr 842].)

■ Additionally, we reject Ford's assertion that the jury could not impose a punitive damage award against it without similarly assessing punitive damages against the employee defendants and that Ford could act with malice only through its employees. Punitive damages may be apportioned

among joint tortfeasors in various amounts according to their individual culpability. (*Thomson* v. *Catalina* (1928) 205 Cal. 402, 407-408 [271 P. 198, 62 A.L.R. 235]; see also *Kim* v. *Chinn* (1943) 56 Cal.App.2d 857, 860-861 [133 P.2d 677].) The jury found that all defendants acted with malice in retaliating against respondent for complaining of discrimination. The jury could find that the corporate consciousness of Ford fostered tolerance of discrimination and that Ford's ratification of the supervisors', managing agents', and employees' actions merited the imposition of all punitive damages. "The primary purpose of punitive damages is to 'penalize wrongdoers in a way that will deter them and others from repeating the wrongful conduct in the future.'" (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 155 [181 Cal.Rptr. 784, 642 P.2d 1305]; see *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 813 [174 Cal.Rptr. 348].)

3. *Punitive Damage Award Not Unconstitutional.*

■ We similarly reject Ford's and amicus's constitutional challenges to the punitive damage award. They contend that punitive damages are unconstitutional because of lack of fair warning and statutory notice of the amount which can be imposed, and the "wholly standardless discretion" given to juries in determining the amount of punitive damages. They acknowledge that both the United States and California Supreme Courts have consistently rejected constitutional challenges to punitive damages. In *Browning-Ferris* v. *Kelco Disposal* (1989) 492 U.S. 257 [106 L.Ed.2d 219, 109 S.Ct. 2909], the United States Supreme Court held that punitive damages do not violate the Eighth Amendment's proscription on excessive fines. However, the court declined to resolve whether due process acts as a check on undue jury discretion to award punitive damages absent express statutory limit. (492 U.S. 257, 276-277 [106 L.Ed.2d 219, 239].)

Ford asserts that the unpredictability and standardlessness of punitive damages renders them unconstitutional. Amicus contends they violate the state constitutional guaranty of due process and that the jury instructions given do not reflect the proper high standard. Amicus argues that the blurred distinctions between "wilfull," "reckless disregard," "conscious indifference" and "conscious disregard" as used in cases and instructions are unconstitutionally vague and allow arbitrary and discriminatory enforcement. (See *Electrical Workers* v. *Foust* (1979) 442 U.S. 42, 50-51, fn. 14 [60 L.Ed.2d 698, 706, 99 S.Ct. 2121].) Amicus asserts that specific standards to guide jury discretion are lacking in Civil Code section 3294 and BAJI Nos. 2.62 (defining "clear and convincing") and 14.71 (wealth of the defendant).

All these arguments are but permutations and combinations of arguments made and rejected in prior California cases. The argument that Civil Code section 3294 is unconstitutional because there is no legislatively prescribed maximum limit and no fixed standards was rejected long ago in *Toole* v. *Richardson-Merrell Inc.* (1967) 251 Cal.App.2d 689, 719 [60 Cal.Rptr. 398, 29 A.L.R.3d 988]. (*Fisher* v. *San Pedro Peninsula Hospital, supra,* 214 Cal.App.3d 590, 621, fn. 12.) The doctrine of punitive damages has been a part of the common law of California long before the Civil Code was adopted. (*Grimshaw* v. *Ford Motor Co., supra,* 119 Cal.App.3d 757, 807.) Amicus concedes that these challenges have been rejected. (See, e.g., *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1096 [234 Cal.Rptr. 835], cert. den. (1988) 486 U.S. 1036 [100 L.Ed.2d 610, 108 S.Ct. 2023].)

In fact, Ford raised these challenges in *Grimshaw* where it argued that "malice" as used in Civil Code section 3294 and interpreted by the California Supreme Court required *animus malus* or bad intent and was conceptually incompatible with an unintentional tort. The appellate court rejected this argument. (119 Cal.App.3d at pp. 808-809.) Ford argued that its due process rights were violated because it did not have "fair warning" that its conduct would render it liable for punitive damages under section 3294. The appellate court rejected this argument, citing a long line of decisions holding punitive damages recoverable in a nondeliberate or unintentional tort where the defendant's conduct constitutes a conscious disregard of the probability of injury to others. (119 Cal.App.3d at p. 811.)

Similarly, the appellate court rejected Ford's attack on BAJI No. 14.71 concerning the burden of proof, "malice," and intent. (119 Cal.App.3d at pp. 815-818.) The court noted that a quantitative formula whereby the amount of punitive damages can be determined in a given case with mathematical certainty is impossible as well as undesirable and listed suggested factors to balance society's interest against the defendant's interest: "The degree of reprehensibility of defendant's conduct, the wealth of the defendant, the amount of compensatory damages, and an amount which would serve as a deterrent effect on like conduct by defendant and others who may be so inclined." (*Id.,* at p. 819.) We note that the instructions given here incorporate those factors.

Moreover, the argument that neither Civil Code section 3294 nor BAJI No. 14.71 provides any real limits to the jury's discretion was rejected in *Zhadan* v. *Downtown L. A. Motors* (1976) 66 Cal.App.3d 481, 501-502 [136 Cal.Rptr. 132]. Civil Code section 3294 simply codifies the common law of punitive damages that defines which exemplary damages may be awarded

and how the amount shall be determined. (See *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 66, fn. 13 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) The argument that no defendant has fair warning of the amount of damages which may be imposed was discussed in *Peterson* v. *Superior Court, supra,* 31 Cal.3d 147, 160-161 which cited with approval *Grimshaw* v. *Ford Motor Co., supra.* The Supreme Court rejected the argument that due process concerns applicable in a criminal case should also apply to punitive damage awards in a civil case. (31 Cal.3d at p. 161.)

Amicus criticizes BAJI No. 2.62 (7th ed. 1990 pocket pt.) because it does not reflect case law holdings that "clear and convincing" evidence must be so obvious as to leave no substantial doubt. (See com. to BAJI 2.62 (1988) Jan. 1990 pocket pt.) Instead, it states only that " 'Clear and convincing' evidence means evidence of such convincing force that it demonstrates, in contrast to the opposing evidence, a high probability of the truth of the fact[s] for which it is offered as proof. Such evidence requires a higher standard of proof than proof by a preponderance of the evidence . . . ." We find the instruction as given a correct statement of the law. If Ford desired a more expansive instruction on the issue, it could have submitted one. (*Willden* v. *Washington Nat. Ins. Co.* (1976) 18 Cal.3d 631, 636 [135 Cal.Rptr. 69, 557 P.2d 501]; *People* v. *Bloom* (1989) 48 Cal.3d 1194, 1212 [259 Cal.Rptr. 669, 774 P.2d 698].)

■ Similarly, we do not find that Ford has been deprived of due process under the state Constitution. As respondent notes, the California law on punitive damages (Civ. Code, § 3294) together with the strict prohibitions on race discrimination and retaliation (Cal. Const., art. I, § 8, and Gov. Code, § 12940 et seq.) provided Ford with adequate notice of the type of conduct which would subject it to a significant punitive damage award if these laws were violated. Moreover, a high award of punitive damages is subject to attack as excessive in a motion for a new trial with the concomitant benefit of possibility of full judicial review. Considering the amount of economic and noneconomic damages awarded, the punitive damage award was neither excessive nor disproportionate.

The United States Supreme Court's decision to review the issue of due process challenge in a case from another state and not involving racial discrimination does not persuade us that the outcome would affect this case. Consequently, we reject the challenges to the constitutionality of the punitive damage award.

The judgment is affirmed. Costs to respondent.

Gilbert, J., and Abbe, J., concurred.

A petition for a rehearing was denied November 14, 1990, and appellants' petition for review by the Supreme Court was denied January 17, 1991.