[No. B040928. Second Dist., Div. One. Oct. 2, 1990.]

PHILLIP J. O'LASKEY, Plaintiff and Appellant, v.
MIKE SORTINO, Defendant and Respondent.

COUNSEL

Robert S. Gerstein for Plaintiff and Appellant.

Douglas A. Amo for Defendant and Respondent.

OPINION

VOGEL, J.—Plaintiff Phillip J. O'Laskey appeals from a judgment entered after defendant Mike Sortino's motion for summary judgment was granted. O'Laskey contends the trial court erred by refusing to receive in evidence a transcript of a tape-recorded telephone conversation which, if admitted, would have created a triable issue of material fact concerning the timeliness of O'Laskey's complaint. Alternatively, O'Laskey contends the trial court should have continued the hearing on the motion to allow him to obtain admissible evidence with which to create a triable issue. We reject both contentions and affirm the judgment.

FACTS

O'Laskey was injured on February 19, 1985, when he "collided" with a cable and fell from his motorcycle. On February 27, 1986, one year and

eight days after the accident, O'Laskey filed a complaint for damages for personal injuries, naming as defendants Cablevision Services, Inc., and its employee, Mike Sortino, alleging they negligently stretched the cable across the street.

Cablevision and Sortino were served with the original complaint and one or both of them demurred (the record is unclear), contending the action was barred by limitations. The demurrer was not heard, and it appears the action simply languished for over two years.

One thing did happen during that two-year interval. Sometime prior to June 1986, O'Laskey's attorney hired a private investigator to determine whether and for how long Sortino may have traveled outside the state during the year following the accident.[1] Using a ruse, the investigator obtained a statement over the phone from Sortino.[2] The ruse was clever—the investigator said he was the producer of a new television show, "Travel Trivia," and that Sortino was one of ten finalists eligible to win $100,000 in a drawing if Sortino had traveled in the last year and would answer some questions about his trips. The bait was irresistible and the response was both immediate and incriminating—Sortino explained that he and four friends had rented an airplane and flown to Las Vegas, and that he had stayed there for two weeks in July of "last year." This conversation was tape-recorded by the investigator without Sortino's knowledge or consent.

On June 16, 1986, O'Laskey's lawyer received from the investigator a transcript of the tape. O'Laskey nevertheless did nothing for 18 months. Finally, on March 18, 1988, he filed a first amended complaint, adding a new allegation that Sortino had been out of the state for at least eight days between February 19, 1985, and February 19, 1986.

---

[1] Code of Civil Procedure section 351 tolls the statutory period within which a complaint must be filed when a defendant is absent from the state after the cause of action accrues. Section 351 states: "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

If Sortino had been absent from California during the year following the accident for eight or more days, O'Laskey's action would have been timely. (Code Civ. Proc., § 340, subd. (3).)

[2] One of the issues in this case involves the authenticity of the transcript of this statement. Although we conclude that the transcript was not authenticated and therefore was properly excluded, we include in our factual recitation information obtained from that transcript because it is necessary to an understanding of the case. We do not accept the truth of the "facts" taken from the transcript, i.e., the conversation described in the text immediately following this footnote.

On August 4, 1988, Sortino answered the first amended complaint.[3] On September 9, 1988, O'Laskey took Sortino's deposition and Sortino testified as follows:

"Q. Now, since the accident in February of 1985, have you been to Las Vegas?

"A. No.

"Q. You never went to Las Vegas?

"A. I don't remember going there, no.

"Q. Do you remember if you and four other friends flew to Las Vegas?

"A. Yeah, I do now that you bring it up.

"Q. And it was a private plane, wasn't it?

"A. Right. That's right.

"Q. And that was about July 1985, wasn't it?

"A. I couldn't tell you when that was offhand.

". . . . . . . . . . . . . . . . . . .

"Q. Anyway, if you told someone you went there in July of 1985, you wouldn't contradict that, I take it.

"A. No.

"Q. And you stayed over about two weeks?

"A. No. We went over a weekend. If I remember correctly, we just flew over and flew back.

"Q. So if you told someone that you were there for about two weeks, that would have been an error?

"A. Yes, it would be. Who could afford to stay that long?"

---

[3] Cablevision Services, Inc., successfully demurred to the first amended complaint, and it was dismissed from the action on July 19, 1988. It is not a party to this appeal.

Relying on his own deposition testimony, Sortino moved for summary judgment on the ground O'Laskey's complaint was barred by limitations. O'Laskey's opposition included only two items of evidence—(1) a transcript of the investigator's tape and (2) a declaration by O'Laskey's lawyer purporting to authenticate that transcript and the tape. The declaration also stated that the investigator's deposition was set for December 9, 1988, and requested a continuance of the hearing (which was set for December 13) if the trial court concluded "that plaintiff needs to produce the other party to the conversation." O'Laskey's two-page memorandum of points and authorities argued that a triable issue of material fact was raised by the transcript, i.e., whether Sortino had been absent from the state for two weeks or just a weekend.

Sortino's reply objected to the transcript on the grounds that (1) the conversation was recorded without Sortino's consent in violation of Penal Code section 632 and (2) the transcript was in any event inadmissible hearsay because the tape had not been authenticated. Sortino also pointed out that O'Laskey had, for no apparent reason, unilaterally cancelled the investigator's December 9 deposition.

At the hearing, the court and counsel discussed the admissibility of the transcript, and O'Laskey mentioned his request for a continuance to take the investigator's deposition. The trial court noted the absence of any explanation why the deposition was not taken earlier or why, "at the very least," a declaration by the investigator had not been presented. No reasons were offered by O'Laskey's counsel. The trial court thereupon denied O'Laskey's request for a continuance, refused to receive the transcript in evidence on the basis of section 632 of the Penal Code, and granted Sortino's motion for summary judgment. O'Laskey appeals from the judgment thereafter entered.

DISCUSSION

I.

## THE MOTION FOR SUMMARY JUDGMENT WAS PROPERLY GRANTED

O'Laskey contends the trial court erred in excluding the transcript. If O'Laskey is correct, the judgment must be reversed because the transcript creates a triable issue of material fact concerning Sortino's absence from the state during the year following the accident. If O'Laskey is wrong, the judgment was proper since O'Laskey does not contend there was any other basis for denying the motion. To support his claim of error, O'Laskey argues (1) that the transcript was improperly excluded because the tape

recording from which it was purportedly made was not recorded in violation of section 632, subdivision (a), of the Penal Code, and (2) that the transcript was properly authenticated. ■ ■ ■ ■ We agree that the conversation was not recorded illegally and that the transcript should not have been excluded pursuant to subdivision (d) of section 632 of the Penal Code, but we do not agree that the transcript was properly authenticated. We therefore conclude that summary judgment was proper in this case.[4]

### A. Penal Code Section 632 Does Not Bar Admission of the Transcript

It is a crime to intentionally record a confidential telephone communication without the consent of all parties to the conversation and a statutory exclusionary rule bars the use of any evidence so obtained. (Pen. Code, § 632, subds. (a) and (d).)[5] Subdivision (c) of section 632 of the Penal Code defines the term "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

O'Laskey admits that the telephone conversation between Sortino and the investigator was taped intentionally and without Sortino's consent. The only question is whether the communication was confidential.

---

[4] The determination whether summary judgment was proper in this case involves questions of law. We therefore conduct an independent review of the trial court's decision, ignoring the reasons stated for the ruling if we disagree with them, reviewing the actual ruling and not its rationale. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721]; *Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 673 [242 Cal.Rptr. 84].)

[5] Subdivision (a) of section 632 of the Penal Code provides that: "Every person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among such parties in the presence of one another or by means of a telegraph, telephone or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in the county jail not exceeding one year or in the state prison, or by both that fine and imprisonment."

Subdivision (d) of section 632 of the Penal Code provides that: "Except as proof in an action or prosecution for violation of this section, no evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section shall be admissible in any judicial, administrative, legislative, or other proceeding."

■ Application of the statutory definition of "confidential communication" turns on the reasonable expectations of the parties judged by an objective standard and not by the subjective assumptions of the parties. (*People* v. *Wyrick* (1978) 77 Cal.App.3d 903, 909 [144 Cal.Rptr. 38].) For example: a person incarcerated pending trial whose jailhouse confession to his brother is recorded has no reasonable expectation of privacy, notwithstanding his belief that they were in an "attorney's room" where conversations would not be recorded (*People* v. *Blair* (1969) 2 Cal.App.3d 249, 255 [82 Cal.Rptr. 673] [but see *DeLancie* v. *Superior Court* (1982) 31 Cal.3d 865 (183 Cal.Rptr. 866, 647 P.2d 142), limiting the use of police recordings]); and a person under arrest, in police custody in a patrol car, whose statements to his cohort are recorded has no reasonable expectation of privacy where it was unlikely he thought he was being placed in the police car for a sight-seeing tour of the city. (*People* v. *Newton* (1974) 42 Cal.App.3d 292, 296 [116 Cal.Rptr. 690], cert. den. *Newton* v. *California* (1975) 420 U.S. 937 [43 L.Ed.2d 414, 95 S.Ct. 1147]; see also *People* v. *Todd* (1972) 26 Cal.App.3d 15, 17 [102 Cal.Rptr. 539].)

Conversely, an expectation of privacy is objectively reasonable in telephone conversations between business associates relating to ongoing ventures (*Frio* v. *Superior Court* (1988) 203 Cal.App.3d 1480, 1488-1490 [250 Cal.Rptr. 819]), between an attorney and a physician who had previously refused to assist the attorney in a personal injury case (*People* v. *Wyrick*, *supra*, 77 Cal.App.3d 903, 909), and probably between an attorney and a blind client notwithstanding the client's belief that a reasonable attorney would expect his telephone conversations with a blind client to be recorded (*Warden* v. *Kahn* (1979) 99 Cal.App.3d 805, 814-815 [160 Cal.Rptr. 471]).

Although the facts of these cases differ substantially from those now before us, we distill from this comparison the basic rule that the statute means what it says—and we thus examine whether Sortino reasonably expected, under the circumstances of the investigator's call, that the conversation would not be divulged to anyone else. For this limited purpose, we assume the truth of the facts stated in the transcript.

The investigator was a complete stranger to Sortino. He identified himself as the producer of a new television show, Travel Trivia, and told Sortino that he was one of ten finalists for a $100,000 prize. With visions of dollars dancing in his head, Sortino eagerly answered questions about his vacationing habits and described his two-week trip to Las Vegas. Nothing in this conversation supports Sortino's claim that a reasonable person would view it as confidential. To the contrary, Sortino had every reason to hope that his statements would be broadcast into every home with cable television. In short, judged objectively, there was no reasonable expectation of

confidentiality and nothing to indicate a desire by Sortino that the communication be confined to the parties thereto. It follows that the trial court erred in finding that the transcript was excluded by subdivision (d) of section 632 of the Penal Code.

B. *The Transcript Was Properly Excluded Because the Tape Was Not Authenticated*

■ The tape itself was not offered into evidence and there was no declaration from the investigator. Instead, O'Laskey offered a three-page transcript and a declaration by his attorney stating that counsel had retained an investigation service; that on June 16, 1986, he received the transcript and a tape from the investigator; that he listened to the tape; that the transcript is an accurate written record of the recorded conversation; and that the voice on the tape is the same as Sortino's voice, which he heard at Sortino's deposition. This evidence does not suffice to authenticate the transcript, that is, to establish that the three-page transcript accurately reflects the content of the tape—and it is wholly insufficient to authenticate the tape itself.

For evidentiary purposes, a tape recording is a "writing" (Evid. Code, § 250) and must therefore be authenticated before it can be received into evidence. (Evid. Code, § 1401, subd. (a).) To authenticate a writing, its proponent must introduce "evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is . . . ." (Evid. Code, § 1400; *Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 524-526 [67 Cal.Rptr. 761, 439 P.2d 889] [a document is not presumed to be what it purports to be].) Without authentication of the tape, the transcript is irrelevant. (Evid. Code, § 1401, subd. (b); 2 Witkin, Cal. Evidence (3d ed. 1986) § 905, pp. 870-871 ["if a person offers in evidence a copy of a writing, he must make a sufficient preliminary showing of the authenticity of both the copy and the original (*i.e.*, the writing sought to be proved by the copy)"].)

There is no way to know whether the tape is what O'Laskey claims it is. No declaration or other sworn testimony of the investigator was offered to describe when, where, how or by whom the tape was made. (See Evid. Code, § 1413; *People* v. *Spencer* (1963) 60 Cal.2d 64, 77-78 [31 Cal.Rptr. 782, 383 P.2d 134].) Recourse to the transcript adds nothing because no date (or reference point permitting calculation of a date) is stated and no evidence was offered to establish the date the tape was made. Accordingly, Sortino's statement that he had taken a two-week vacation "during the past year" is meaningless—and irrelevant. Similarly, there is nothing in the transcript to identify the investigator as the second party to the conversation, and although O'Laskey's attorney testified that he recognized Sortino's

voice on the tape, counsel's declaration does not say whether he ever talked to the investigator or that he recognized that voice on the tape.

Furthermore, O'Laskey failed to introduce any evidence regarding the completeness or accuracy of the tape. (*People* v. *Patton* (1976) 63 Cal.App.3d 211, 220 [133 Cal.Rptr. 533].) The statement of O'Laskey's attorney in his declaration that "I have listened to the tape, and the transcript is an accurate written record of the conversation contained on the tape" addresses the accuracy of the transcript, not the accuracy or completeness of the tape. O'Laskey's attorney cannot know the true and complete extent of the conversation—and the investigator is the only person competent to testify whether the tape had been altered or edited or whether it included the entire conversation.

Since no foundation for the tape was laid, the trial court properly excluded the transcript and there was no error in this regard.[6]

## II.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING A CONTINUANCE

■ The final and ultimately crucial issue is whether the trial court's denial of O'Laskey's request for a continuance was an abuse of discretion.[7] We hold that it was not.

---

[6] On appeal, Sortino suggests that the investigator's "unlawful and deceitful act" in lying about a nonexistent television show somehow affects the admissibility of the transcript. We do not reach this issue because O'Laskey's failure to authenticate the tape leaves us unable to determine whether there really was an investigator who lied or whether, in fact, some unidentified television producer called Sortino and carried on a truthful conversation. While we recognize the odds favor the former over the latter possibility, we make this point to illustrate the problems inherent in unauthenticated evidence.

Relying on Evidence Code section 1421, O'Laskey also contends that the tape is self-authenticating because the conversation refers to matters unlikely to be known to anyone other than Sortino. We do not reach this issue because the conversation does not prove itself—it does not disclose the date of the two-week vacation, the critical fact it was offered to prove. (*People* v. *Fonville* (1973) 35 Cal.App.3d 693, 709 [111 Cal.Rptr. 53].)

O'Laskey's final contention—that exclusion is impermissible as a matter of "judicial fairness and ethics" because it permits Sortino to benefit by his perjury—fails because O'Laskey failed to provide the trial court with the foundation that would have justified admission of the transcript or the tape.

[7] In light of our conclusion that the tape or a transcript of it could have been admitted if properly authenticated, a continuance to permit O'Laskey to obtain a declaration from the investigator would have resulted in an order denying the motion for summary judgment—unless the investigator was unwilling to execute a declaration because the tape was not accurate or for some other reason. O'Laskey's failure to obtain a declaration in the first instance

"Generally, power to determine when a continuance should be granted is within the discretion of the court, and there is no right to a continuance as a matter of law. [Citation.] However, Code of Civil Procedure section 437c mandates a continuance of a summary judgment hearing upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280 [241 Cal.Rptr. 466], quoting *Fisher* v. *Larsen* (1982) 138 Cal.App.3d 627, 648 [188 Cal.Rptr. 216].)

Read liberally, the declaration of O'Laskey's attorney did request a continuance but it fails altogether to show good faith or any reason at all why the information could not earlier have been obtained. All he said was this:

"I have noticed the deposition of Joe O'Melia, the other party to the conversation for December 9, 1988, In (*sic*) the event the Court concludes that plaintiff needs to produce the other party to the conversation, I would respectfully request a continuance to allow the filing of the transcript of that deposition with the Court."

There is nothing to show why the December 9 deposition was unilaterally cancelled by O'Laskey or why the investigator's declaration could not have been obtained prior to the hearing of the motion. The action was filed on February 27, 1986. O'Laskey obtained the transcript from the investigator on June 16, 1986. The motion for summary judgment was not heard until December 13, 1988. Thus, O'Laskey had 18 months from receipt of the tape to obtain the evidence he needed to ensure admissibility of the transcript. Even if O'Laskey did not realize he had a problem until he saw Sortino's reply papers objecting to the transcript, there is no explanation for his failure to file supplemental papers requesting a continuance to obtain a declaration, and no explanation for his failure to explain the delay when the trial court emphasized the absence of any "reason why you shouldn't have taken the deposition before or, at the very least, had a declaration executed." We suspect there was no legitimate reason—if there was, it would have been stated at the hearing.

The result we reach is harsh, but it is unavoidable. It was O'Laskey's responsibility to prosecute his case with diligence, to collect admissible evidence and to conduct discovery in a timely fashion. It was O'Laskey's responsibility to offer admissible evidence to defeat Sortino's motion for summary judgment. If he had a legitimate reason for failing to submit a declaration from the investigator, it was O'Laskey's responsibility to state

---

and his unilateral cancellation of the investigator's deposition after Sortino objected to the admissibility of the transcript suggest the existence of a problem with the tape.

that reason in a declaration or, at a minimum, to state that reason when the trial judge noted its absence. O'Laskey assumed no responsibility at all, and his request for a continuance was therefore properly denied.[8]

## DISPOSITION

For the reasons explained above, the judgment is affirmed.

Spencer, P. J., and Devich, J., concurred.

---

[8] We recognize that these errors were made not by O'Laskey personally but by his attorney. For present purposes, those errors are chargeable to O'Laskey.

For the record, we also note that but for the anachronism of section 351 of the Code of Civil Procedure, O'Laskey's complaint would have been untimely as a matter of law. We agree with the concurring opinion of Justice King in *Mounts* v. *Uyeda* (1990) 223 Cal.App.3d 474 [272 Cal.Rptr. 876]: "I . . . write separately to suggest that the Legislature repeal Code of Civil Procedure section 351. This section, adopted in 1872, may have made sense when there was no long-arm statute and no ability to serve an absent defendant by substituted service or by publication. It makes no sense today and should be repealed.

"A defendant's absence from the state in no way limits or interferes with a plaintiff's filing of an action. Indeed, we see here that a defendant is penalized for having taken a legitimate four-day vacation out of state long before the statute ran. Such an absence should not reward a tardy plaintiff who has failed to file an action within the statutory period. There is no reason why another plaintiff with the same claim should have a shorter period within which to file an action because the defendant in that action did not leave California during the statutory period."