Filed 7/14/15  P. v. Feaster CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LEE A. FEASTER,<br><br>    Defendant and Appellant. | B253088<br><br>(Los Angeles County<br> Super. Ct. No. BA394866) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Affirmed.

Koryn & Koryn and Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Blythe J. Leszkay and Esther P. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted appellant Lee A. Feaster of one count of forcible oral copulation. (Pen. Code, § 288a, subd. (c)(2)(a).)[1] His sole contention on appeal is that the trial court abused its discretion in admitting a recording of a 911 telephone call. We find no abuse of discretion and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

The victim, Belinda M., met appellant in 2009 when she worked for appellant's sister, Linda. Appellant was interested in Belinda romantically, but she told appellant she only wanted to be friends with him. Belinda lost touch with appellant when he moved out of the Los Angeles area in July 2009. Belinda lost her hearing in 2010 because of a brain tumor.

On March 6, 2012, around 9:30 p.m., appellant showed up at Belinda's home. After Belinda told him that she had lost her hearing, appellant started to cry. Belinda did not want her family to see him crying, so she suggested they talk in his car.

Appellant and Belinda decided to visit Linda. Appellant, Belinda, and Linda had dinner together, but after a few hours, appellant became angry and upset. Belinda asked appellant to take her home.

Instead of taking Belinda home, appellant drove to a liquor store and then to his house. Appellant was drinking alcohol while driving. Belinda realized from his mannerisms and his reckless driving that appellant was becoming angry, but she could not hear what he was saying. She became afraid and tried to dial 911, but appellant hit the phone out of her hand. She picked up the phone and put it in her pocket.

---

[1] Unspecified statutory references will be to the Penal Code.

When appellant stopped the car at his house, Belinda got out of the car and started walking away. Belinda saw appellant coming toward her, so she retrieved her phone, dialed 911, and placed it back in her pocket. She told appellant she would catch a bus and tried to walk away, but he grabbed her and began to drag her back to the car. Belinda struggled with him, fell to the ground, and started yelling for help. Appellant hit Belinda, put her in the car, and drove away.

Appellant stopped the car, removed his pants, and forced Belinda's head onto his penis. Belinda decided to cooperate with him because she was afraid he would harm her if she did not. Appellant held Belinda's head down, so she performed oral copulation and he ejaculated. Appellant motioned for Belinda to remove her pants. Appellant tried to have sex with her, but he was unable to because his penis was flaccid.

Arnita Bilal, a police service representative, answered Belinda's 911 call. Bilal was unable to determine the exact location of the caller, but she stayed on the line to listen and directed officers to various locations to try to find the caller. She remained on the line because the sounds she heard made her "terrified" for the caller.

A recording of the 911 call was played for the jury over defense counsel's objections. During the call, Belinda repeatedly told appellant that he was frightening her by trying to hit her and taking out his anger on her. Appellant threatened Belinda, asking her, "Do you want to live?! Yes or no?" He threatened to hurt her and told her, "Suck my dick now!" The People also played a silent portion of the tape which they contended contained the sounds of oral copulation.

Los Angeles Police Department Officer Al Vicencio responded to the 911 call and was directed to several locations by the dispatcher. When he and his partner pulled up behind appellant's car and ordered the occupants out of the car,

3

the police dispatchers said they could hear the officers' voices through the phone. Officer Vicencio therefore knew this was the correct call.

Officer Vicencio asked Belinda, who appeared nervous, if everything was all right. When Belinda did not respond, he realized she could not hear, so he wrote down his question for her. Belinda told him appellant punched her, shoved her in his car, and forced her to have sex with him.

*Defense Evidence*

Appellant testified that he and Belinda developed a romantic and sexual relationship after they met in 2009. He sent her money a few times after he moved away, but they lost contact around 2010. He decided to visit her on March 6, 2012, because he knew she had lost her hearing, and he was concerned about her. On his way to her house, he stopped at a liquor store and bought alcohol, which he drank as he drove.

While appellant and Belinda were talking in appellant's car, appellant asked if they could have sex, and Belinda said maybe. Belinda asked appellant for money to buy Vicodin, so he gave her money and drove her somewhere to buy the pills. They drove to Linda's house and ate dinner.

After leaving Linda's house, Belinda asked appellant to buy her more Vicodin pills, so he gave her $20 and she bought more. At some point during the car ride, appellant noticed that Belinda had taken $20 more from him. He became angry and told her that he would have given her money if she had asked. They began arguing while standing outside his house. He held her arms to calm her down because she was "going into a tantrum." Appellant testified that he was afraid to leave Belinda alone outside the house, so he put her back in the car, but she tripped and fell. He denied hitting her. He acknowledged that Belinda

4

performed oral sex, but he testified that it was consensual, and that she was the one who initiated having sex.

Appellant identified his voice on the 911 call. He attributed the angry things he said to being under the influence of alcohol.

James Lloyd, appellant's former roommate, testified that Belinda had frequently spent the night with appellant. Lloyd heard appellant and Belinda arguing outside his house on the night of the incident. He told them to leave because they were too loud, so appellant and Belinda got in the car and drove away.

*Rebuttal Evidence*

The People entered into evidence a recording of appellant's interview with Los Angeles Police Detective Johnny Durden.

*Procedural Background*

Appellant was charged with three counts: (1) forcible oral copulation (§ 288a, subd. (c)(2)(a)); (2) forcible rape (§ 261, subd. (a)(2)); and (3) kidnapping to commit another crime (§ 209, subd. (b)(1)). As to counts 1 and 2, the information alleged that appellant kidnapped the victim to commit the offenses. (§ 209.) The information further alleged that appellant had suffered one prior strike (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and one prior serious felony conviction (§ 667, subd. (a)(1)).

The jury found appellant guilty of count 1, forcible oral copulation, but found not true the allegation that appellant kidnapped the victim. The jury found him not guilty of the charged and lesser included offenses in count 2 and not guilty of count 3. The court declared a mistrial as to the lesser included offenses in count

3. Appellant admitted the prior conviction allegations. The trial court sentenced appellant to the mid term of 6 years, doubled pursuant to the Three Strikes law, plus 5 years for the prior serious felony conviction, for a total of 17 years.

After appellant was sentenced, the People filed an amended information charging appellant with one count of kidnapping and alleging two prior strikes, two prior serious felony convictions, and six prior prison terms. The People withdrew the amended information, and appellant agreed to plead guilty to the lesser included offense of simple kidnapping in the original information and to admit a prior strike. The court sentenced appellant to an additional term of 6 years to be served consecutive to the sentence imposed on count 1.

**DISCUSSION**

Appellant challenges the trial court's admission of the 911 tape. He contends that the tape was not properly authenticated and that the admission of the silent portion of the tape was more prejudicial than probative. We find no error.

Defense counsel objected to the introduction of the recording of the 911 call on the basis that there was no authentication that the voices on the recording belonged to appellant and Belinda. Belinda was unable to identify her voice because she could not hear. The court admitted the tape on the grounds that "the time situations all support the proper foundation," and that Bilal was able to identify her voice on the tape.

The People subsequently sought to introduce a 10-minute long portion of the tape that contained no speaking but that the People argued contained "the sucking sound" of the oral copulation. Defense counsel objected on the ground that the jury would be told the sound was oral copulation even though "it could be something totally different." The court reasoned that "we don't have a witness

6

who can actually hear and say that that's me or that's the sound, that I remember that sound." Thus, the court decided that the jury could decide how much weight to give the recording, and defense counsel "can argue that the sound is meaningless, and [the prosecutor] can argue that it reflects a sexual act." The court admitted the recording, holding that there was a sufficient foundation and it was clearly relevant.

However, after playing five minutes of the recording for the jury, the court asked the prosecutor to stop the recording and called a sidebar. The court stated, "I don't hear any sucking noises or anything like that," and questioned the "need to listen to silence." The prosecutor argued that it showed the length of time until the police arrived, but the court told the prosecutor to fast forward the tape. Bilal testified that the noises and voices on the tape were the sounds she heard during the 911 call. She described the sounds she heard as "sucking, suction noises." Appellant identified his voice on the 911 call.

I.    *Applicable Law*

"This court reviews claims regarding a trial court's ruling on the admissibility of evidence for an abuse of discretion. [Citation.]" (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1001 (*Dawkins*).) "[W]e will not disturb the trial court's ruling 'except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' [Citation.]" (*People v. Goldsmith* (2014) 59 Cal.4th 258, 266.)

"Audio recordings are writings as defined by the Evidence Code. (Evid. Code, § 250.) 'To be admissible in evidence, a writing must be relevant and

7

authenticated.  ([Evid. Code,] §§ 350, 1401.)" (*Dawkins*, *supra*, 230 Cal.App.4th at p. 1002, fn. omitted.)

"An audio recording is typically authenticated by showing it is a reasonable representation of that which it is alleged to portray.  [Citation.]  Typically, a party to the conversation recorded is called to testify to the audio recording's accuracy.  However, the foundation may, but need not, be supplied by the person witnessing the event being recorded.  It may be supplied by other witness testimony, circumstantial evidence, content and location, or any other means provided by law, including statutory presumption.  [Citation.]" (*Dawkins, supra*, 230 Cal.App.4th at p. 1002.)


II.     *The Tape Was Properly Authenticated*

Appellant contends that the prosecution did not properly authenticate the 911 tape, relying on *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241, disapproved on other grounds in *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768, 774-776, and footnote 4.  *O'Laskey* is distinguishable.

*O'Laskey* held that a tape recording of a phone call was not properly authenticated because the tape itself was not offered into evidence and there was no declaration from the person who recorded the call describing "when, where, how or by whom the tape was made." (*O'Laskey, supra*, 224 Cal.App.3d at p. 249.)  Instead, the proponent of the evidence offered a transcript of the call and a declaration by his attorney describing the circumstances of the recording.  The circumstances therefore are quite different from those presented here.

Unlike *O'Laskey,* both the recording of Belinda's call and the transcript were offered into evidence.  In addition, the testimony of Bilal, the 911 operator, was sufficient to authenticate the recording because she was a party to the

8

recording. (*Dawkins, supra*, 230 Cal.App.4th at p. 1002.) She testified that she answered the call from Belinda and stayed on the line with her in order to direct officers to her location. She described the circumstances of the call, identified her own voice on the call, and testified that the noises on the tape were the noises she heard during the 911 call.

Other circumstances of the call further authenticated the recording. Belinda testified that she called 911 and placed the phone in her pocket. The time frame of the call was consistent with Bilal's testimony, and Officer Vicencio testified that the operator told him his voice was heard in the call. Finally, appellant identified his voice on the recording.

The tape was properly authenticated by the testimony of parties to the recording and by circumstantial evidence. (*Dawkins*, *supra*, 230 Cal.App.4th at p. 1002.) The trial court did not abuse its discretion in admitting the recording.

III. *The Tape Was Not More Prejudicial Than Probative*

Appellant contends that the silent portion of the 911 call, even if properly authenticated, was more prejudicial than probative and thus should have been excluded under Evidence Code section 352. However, he has forfeited appellate review of the issue by not objecting on that specific ground in the trial court. (*People v. Chism* (2014) 58 Cal.4th 1266, 1292-1293.)

"A trial court may exclude otherwise relevant evidence when its probative value is substantially outweighed by concerns of undue prejudice, confusion, or consumption of time. [Citations.] ""Prejudice' as contemplated by [Evidence Code] section 352 is not so sweeping as to include any evidence the opponent finds inconvenient. Evidence is not prejudicial, as that term is used in a section 352 context, merely because it undermines the opponent's position or shores up that of

the proponent. The ability to do so is what makes evidence relevant. The code speaks in terms of *undue* prejudice. Unless the dangers of undue prejudice, confusion, or time consumption "'substantially outweigh'" the probative value of relevant evidence, a section 352 objection should fail. [Citation.] "'The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.'" [Citation.]' [Citation.]" (*People v. Scott* (2011) 52 Cal.4th 452, 490-491 (*Scott*).)

Appellant contends that "[t]he silent portion of the tape did no more than engender sympathy for the victim" and therefore prejudicially inflamed the jurors' emotions. The silent portion of the tape surely could not have engendered sympathy for the victim any more than the verbal portion of the tape, on which appellant is heard repeatedly swearing at and making threatening statements to Belinda. The transcript of the tape shows that Belinda repeatedly told appellant that she was afraid and felt threatened by him. She screamed, "Please don't hit me!" when appellant told her to get in the car, and she pleaded for someone to help her. Appellant threatened to kill Belinda and told her to "suck [his] dick." The silent portion of the tape merely corroborated Belinda's testimony that she was forced to perform oral copulation after being threatened by appellant. The admission of the silent portion of the tape therefore "shore[d] up" the prosecution's position without being unduly prejudicial. (*Scott*, *supra*, 52 Cal.4th at p. 490.)

10

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:



MANELLA, J.



COLLINS, J.

11